Docket No. 10-17354

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

## IN RE: ATM FEE ANTITRUST LITIGATION

_____

### PAMELA BRENNAN, *et al.*,

*Plaintiffs-Appellants,*

v.

### CONCORD EFS, INC., *et al.*,

*Defendants-Appellees.*

_____

*Appeal from the Judgment of the United States District Court for the
Northern District of California,
No. 3:04-cv-02676-CRB • Honorable Charles R. Breyer*

_____

## APPELLEES' RESPONSE TO PETITION FOR REHEARING EN BANC

W. Stephen Smith
Deanne E. Maynard
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW, Suite 6000
Washington, D.C. 20006-1888
Telephone: (202) 887-1500
Facsimile: (202) 887-0763

Robert S. Stern
Sylvia Rivera
MORRISON & FOERSTER LLP
555 West Fifth Street, Suite 3500
Los Angeles, California 90013-1024
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

*Attorneys for Defendant-Appellee*
**JPMorgan Chase Bank, N.A., Successor-in-interest to Bank One, N.A.**

*[Additional Defendants-Appellees and Counsel Listed on Signature Page]*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................ii

INTRODUCTION ...............................................................................1

STATEMENT ....................................................................................2

I.     THE PANEL CORRECTLY CONCLUDED THAT PLAINTIFFS' PASS-ON CLAIM RUNS SQUARELY INTO THE *ILLINOIS BRICK* WALL ..............................................................................4

II.    THE PANEL'S DECISION DOES NOT CONFLICT WITH DECISIONS OF THIS COURT OR OTHER CIRCUITS ...........................8

    A.    The "Ownership or Control" or "No Realistic Possibility" Exception........................................................................8

    B.    The "Co-Conspirator Exception" ....................................11

    C.    Plaintiffs' Unusual and Counterintuitive Claim Presents An Unsuitable Vehicle For En Banc Review...........................16

CONCLUSION ................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona v. Shamrock Foods Co.*,
729 F.2d 1208 (9th Cir. 1984) .............................................................. 11, 17

*California v. ARC America Corp.*,
490 U.S. 93 (1989) ................................................................................ 6

*Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*,
523 F.3d 1116 (9th Cir. 2008) ............................................................ *passim*

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) ............................................................. 12, 15

*Freeman v. San Diego Ass'n of Realtors*,
322 F.3d 1133 (9th Cir. 2003) ........................................................... 9

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) .............................................................................. *passim*

*In re Linerboard Antitrust Litig.*,
305 F.3d 145 (3rd Cir. 2002) ............................................................. 9

*In re Sugar Indus. Antitrust Litig.*,
579 F.2d 13 (3rd Cir. 1978) ............................................................... 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010) ...................................................... 14

*Kansas v. Utilicorp United Inc.*,
497 U.S. 199 (1990) .............................................................................. *passim*

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ........................................................... 1, 7, 8, 17

*Merican, Inc. v. Caterpillar Tractor Co.*,
713 F.2d 958 (3rd Cir. 1983) ............................................................. 13

*Paper Sys., Inc. v. Mitsubishi Corp.*,
193 F.R.D. 601 (E.D. Wis. 2000) ...................................................... 15

*Paper Sys., Inc. v. Nippon Paper Indus. Co.*,
    281 F.3d 629 (7th Cir. 2000) ........................................................................ 14

*Paycom Billing Servs., Inc. v. MasterCard Int'l, Inc.*
    467 F.3d 283 (2d Cir. 2006) ........................................................................ 12

*Royal Printing Co. v. Kimberly-Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) .......................................................................... 9

*Stanislaus Food Products Co. v. USS-POSCO Indus.*,
    No. CV F 09-0560, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) .............. 12

## INTRODUCTION

The Supreme Court and this Court have consistently held that *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), prohibits damages claims for injuries arising from allegations that a fixed price was passed on to the plaintiff as part of a separate price.  Here, Plaintiffs claim that the bank Defendants allegedly "fixed" an interchange fee that Plaintiffs admittedly do not directly pay, and then marked it up and passed it on to Plaintiffs as part of a separate fee.  The Panel correctly concluded that Plaintiffs' claim falls squarely within the prohibition of *Illinois Brick*.  431 U.S. at 743-45 (pass-on claims based on a "mark-up" theory are barred); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) (*Illinois Brick* barred claim that banks passed on credit card interchange fees as part of a separate fee).

The courts have recognized a few, narrow exceptions to the rule of *Illinois Brick*.  The Panel correctly declined to expand the scope of those exceptions to reach Plaintiffs' claim.  Plaintiffs assert that the Panel's decision is an "express repudiation" of decisions of other circuits.  Pet. 2.  That is not so.  As the Panel explains, no precedent permits the kind of pass-on claim Plaintiffs allege here; indeed, expanding the scope of the exceptions to encompass Plaintiffs' claim would directly contravene established Supreme Court authority.  *Kansas v. Utilicorp United Inc.*, 497 U.S. 199, 217 (1990) (courts should not determine on a

1

case-by-case basis whether pass-on claims are exempt from *Illinois Brick*); *accord Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1123 (9th Cir. 2008). Moreover, even if this Court were inclined to revisit en banc the scope of its exceptions to *Illinois Brick* at some point, the uncommon and counterintuitive nature of Plaintiffs' claim makes this an unsuitable context in which to do so.

Plaintiffs' Petition for Rehearing En Banc should be denied.

## STATEMENT

This case is a putative class action that alleges an economically irrational price-fixing conspiracy among an ATM network and a handful of its 4,750 members. In a typical price-fixing conspiracy, the conspirators agree to raise the prices they *charge* others in order to increase their revenues. Here, in contrast, Plaintiffs allege that the Star ATM Network and six of its member banks conspired to raise the level of interchange fees the banks *pay* to others. The effect of this so-called "conspiracy" was to increase the bank Defendants' out-of-pocket costs by $120 million in 2009 and 2010 alone. ER9; OP8002 n.2.

Plaintiffs' complaint concerns two different fees associated with "foreign ATM transactions"—*i.e.*, those transactions in which a cardholder withdraws cash from an ATM that is owned and operated by an entity other than the cardholder's bank. OP7998. On the Star network, the cardholder's bank pays a fee—the

interchange fee—to the owner of the ATM, many of which are not banks. OP7999. Approximately 4,100 of Star's 4,750 members, including all of the bank Defendants, generally paid *more* in interchange fees than they received during the period at issue. ER8-9; SER279-83. The cardholder's bank may also charge its cardholder a separate fee—the foreign ATM fee—when the cardholder makes a foreign ATM transaction. OP7999. It is undisputed that some banks do not charge foreign ATM fees at all; some banks charge them to some customers but not to others; and the amounts of such fees vary from bank to bank. OP8013; SER249, 254, 258, 261, 266.

Plaintiffs allege that Defendants "fixed" Star's interchange fee but acknowledge they do not directly pay that fee. OP8007. Plaintiffs claim they are injured by the allegedly "fixed" interchange fee because the banks purportedly "mark up" that fee and pass it on to them through the foreign ATM fee. Pet. 5; ER723-24 ¶¶2-4. Critically, "Plaintiffs do not allege here that the banks agreed to fix the level of the 'mark up' in the foreign ATM fees or even whether such fees would be charged at all." OP8013.

Plaintiffs provide no rational explanation why banks would conspire to raise interchange fees, and thus the banks' own out-of-pocket costs, even if their objective were to charge higher foreign ATM fees. Plaintiffs allege that banks are able to raise foreign ATM fees because cardholders learn of those fees only when

3

they receive their bank statements.  ER748.  But if that were true, then banks could raise foreign ATM fees regardless of how much they pay in interchange fees.

The district court observed that the irrational nature of the alleged conspiracy casts serious doubt on the merits of Plaintiffs' complaint, but concluded that even if it made sense, it is barred by the rule of *Illinois Brick*.  OP8001-8002 & n.2; ER9 n.4.  The Panel unanimously affirmed the district court's holding.  In a carefully reasoned opinion, it concluded that Plaintiffs lack standing under *Illinois Brick* because (i) their injury flows from an allegedly "fixed" fee that was purportedly passed on to them as part of a separate fee, and (ii) none of the narrow exceptions to the *Illinois Brick* rule apply to their pass-on claim.

## I.  THE PANEL CORRECTLY CONCLUDED THAT PLAINTIFFS' PASS-ON CLAIM RUNS SQUARELY INTO THE *ILLINOIS BRICK* WALL

The Panel's conclusion that Plaintiffs' claim is barred by *Illinois Brick* is a straightforward application of well-established precedent of the Supreme Court and this Court.  En banc review of Plaintiffs' fact-bound claim is unwarranted.

*Illinois Brick* strictly prohibits damages claims for injuries arising from allegations that a fixed price was "passed on" to the plaintiff as part of a separate price.  431 U.S. at 743-44.  The Supreme Court reasoned that permitting pass-on claims would require courts to undertake the "nearly insuperable" task of determining how much of a "fixed price" was, in fact, passed on to the plaintiff—

4

often through multiple litigations brought by different plaintiffs. *Id.* at 725 n.3, 741-46.

The Supreme Court expressly considered and rejected the argument that pass-on theories should be permitted in factual circumstances where "these difficulties and uncertainties [are] less substantial." *Id.* at 743-45. In *Utilicorp*, the Court reaffirmed that *Illinois Brick* operates as an inflexible rule of general application. *Utilicorp*, 497 U.S. at 210, 216-17. Recognizing that the "economic assumptions underlying the *Illinois Brick* rule might be disproved in a specific case," the Supreme Court nevertheless refused to endorse a case-by-case approach to determining whether some pass-on claims should be permitted. *Id.* at 217. "In order to avoid extensive fact-based litigation in antitrust suits to establish standing, the Court specifically noted its desire for a brightline rule" that could be "administered with 'simplicity and certainty.'" *Delaware Valley*, 523 F.3d at 1121, 1123.

Plaintiffs contend that, notwithstanding these unequivocal statements, the Supreme Court intended to permit pass-on claims in any case in which a plaintiff alleges the fixed price was passed on by the "price-fixing defendants." Pet. 7. They argue that the Supreme Court circumscribed the kinds of pass-on claims to which the *Illinois Brick* rule applies when it observed in *Utilicorp* that the consumers in that case were "not the immediate buyers from the alleged antitrust

violators." Pet. 7-8. But the quoted language does not purport to define or limit the scope of the rule; it is simply part of the Court's description of the facts of the case. *Utilicorp*, 497 U.S. at 207. The language Plaintiffs quote (Pet. 7) from *California v. ARC America Corp.*, 490 U.S. 93, 97 (1989), likewise merely describes the facts of *Illinois Brick*. As the Panel correctly concluded, *Utilicorp* made clear that *Illinois Brick* flatly prohibits pass-on claims—even when 100 percent of the fixed price allegedly is passed on—because "allowing an exception, even in rather meritorious circumstances, would undermine the rule." *Utilicorp*, 497 U.S. at 216; *accord Delaware Valley*, 523 F.3d at 1123.

The Panel correctly rejected Plaintiffs' attempt (Pet. 12) to re-characterize their complaint as alleging that Defendants also "fixed" the foreign ATM fee that Plaintiffs pay. OP8007. Plaintiffs have never alleged that "the banks agreed to fix the level of the 'mark up' in the foreign ATM fees or even whether such fees would be charged at all." OP8013. Rather, their complaint unambiguously alleges that Defendants "fixed" the *interchange fees* banks pay to ATM owners, and then "marked up" those out-of-pocket expenses and passed them on to Plaintiffs as part of the separate foreign ATM fee some bank customers pay. ER723-24 ¶¶2-4. In *Illinois Brick*, the Supreme Court expressly concluded that "mark-up" claims are barred because they present the same concerns as other types of pass-on claims. 431 U.S. at 743-45.

6

Plaintiffs argue that *Illinois Brick's* prohibition of mark-up claims is undermined by decisions in which courts have held that fixing an "element" of a price may violate the antitrust laws. Pet. 13-15. As the Panel correctly observed, however, those decisions have no bearing here: none involved an alleged conspiracy to fix a price that was *passed on* to the plaintiffs—whether through a mark-up or otherwise. OP8014.

Plaintiffs concede that those cases say nothing about *Illinois Brick* (Pet. 14 n.11), but nevertheless argue that they support the contention that mark-up claims like theirs must be permitted where the defendant allegedly fixed "the price of a good for the purpose of inflating the price of [an]other product." Pet. 15. This Court considered and rejected the same argument in *Kendall*.

The plaintiffs in *Kendall* similarly claimed that banks and credit card networks the banks once owned conspired to fix credit card interchange fees for the purpose and effect of increasing a separate "merchant discount fee" that merchants pay. 518 F.3d at 1049. The Court concluded the claim was barred by *Illinois Brick* because the merchants were not "charged the interchange fee directly," and there was no allegation the defendants conspired to "directly set the merchant discount fee." *Id.* Here, the Panel correctly concluded (OP8009-8010) that, as in *Kendall*, determining "what portion of [an] [allegedly] illegal overcharge was 'passed on'" to the plaintiffs would "'involve all the evidentiary and economic

complexities that *Illinois Brick* clearly forbade.'"  *Kendall*, 518 F.3d at 1049 (first

alteration in original).

## II.  THE PANEL'S DECISION DOES NOT CONFLICT WITH DECISIONS OF THIS COURT OR OTHER CIRCUITS

The Panel correctly concluded that Plaintiffs' claim does not fall within one

of the few, narrow exceptions to the *Illinois Brick* rule.  OP8008-8022.  Plaintiffs

contend that the Panel misconstrued this Court's precedent, and "express[ly]

repudiate[ed]" the decisions of other circuits regarding the scope of the exceptions.

Pet. 1-2, 17-19.  That is incorrect.  The Panel followed this Court's precedent, and

at most observed that other courts have extended the "co-conspirator exception" to

clearly distinguishable factual contexts.  There is no precedent from any circuit that

would permit Plaintiffs' claim, which would require the court to engage in

precisely the analysis *Illinois Brick* forbids.

### A.  The "Ownership or Control" or "No Realistic Possibility" Exception

In *Illinois Brick*, the Supreme Court stated that its rule may not apply in

cases "where the direct purchaser is owned or controlled by its customer"—that is,

where the plaintiff owns or controls the entity that directly paid the fixed price.

431 U.S. at 736 n.16.  In that circumstance, there is no genuine pass-on issue

because the entirety of the alleged overcharge is effectively borne by the plaintiff

when its affiliate pays the price.  This Court and other courts have applied this

reasoning to cases in which the direct purchaser is owned or controlled by the seller. *E.g.*, *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1145 (9th Cir. 2003); *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980).[1]

The Panel's decision does not conflict with these decisions because, as the Panel concluded, this is not a case in which the seller owns or controls the direct purchaser. OP8020-8022. Contrary to Plaintiffs' suggestion (Pet. 17), this is true regardless of how one views the buyer-seller relationship in the context of an ATM network. If one views Star as the seller of bank access to foreign ATMs, it is undisputed that Star did not own or control the bank Defendants. OP8020-8022. Alternatively, if one views foreign ATM owners as the sellers of bank access to their machines (for which they are paid the interchange fee), it is undisputed that foreign ATM owners did not own or control the bank Defendants; by definition, foreign ATM transactions are those in which the ATM owner has no corporate relationship to the bank whose customer engages in the transaction. OP7998.

Plaintiffs criticize the Panel for not extending the Court's decision in *Freeman* to reach cases like this one, where the seller and direct purchaser are not commonly owned or controlled. Pet. 17. Plaintiffs argue they should be afforded

---

[1] *See In re Linerboard Antitrust Litig.*, 305 F.3d 145, 148 n.1 (3rd Cir. 2002) (direct purchasers were subsidiaries of the sellers); *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 15 (3rd Cir. 1978) (same).

standing if they can show there is no "realistic possibility" that "the Bank Defendants will sue Star or each other" because a contrary result "has the potential to undermine antitrust enforcement." Pet. 17, 19.

The Panel properly rejected Plaintiffs' invitation to extend *Freeman* in this way, as doing so would require courts to engage in exactly the kind of complex factual analysis that *Illinois Brick* forbids. OP8015-8016. Here, thousands of banks—including the six bank Defendants—directly paid the allegedly "fixed" interchange fee to companies with which they have *no* corporate affiliation. ER9; SER 277, 280-83. In this case, unlike *Freeman*, the only way a court could determine how much (if any) of the allegedly "fixed" fees the banks passed on to their customers, and thus whether there is a realistic possibility any of the banks would sue, would be to undertake the "burden of litigating the intricacies of pass-on." *Illinois Brick*, 431 U.S. at 745-46.

As this Court has recognized, the Supreme Court adopted the *Illinois Brick* rule to avoid just such "fact-based litigation in antitrust suits to establish standing." *Delaware Valley*, 523 F.3d at 1121. The Supreme Court expressly acknowledged that, in some cases, "direct purchasers sometimes may refrain from bringing a treble-damages suit for fear of disrupting relations with their suppliers," but concluded it was better to limit standing to direct purchasers even where the "rule denies recovery to those indirect purchasers who may have been actually injured

10

by antitrust violations." *Illinois Brick*, 431 U.S. at 746. *Accord Delaware Valley*, 523 F.3d at 1124 (*Illinois Brick* and *Utilicorp* bar indirect purchaser suits even where direct purchasers "could theoretically bring a claim," regardless of the likelihood of such a claim). The Panel thus correctly "decline[d] to extend the exception noted in *Royal Printing* and *Freeman*." OP8020.

### B.    The "Co-Conspirator Exception"

The Panel's conclusion that Plaintiffs' claim is barred by *Illinois Brick* likewise does not conflict with the decisions of this Court and other courts applying the so-called "co-conspirator exception."

The Supreme Court has never recognized a "co-conspirator exception."[2] Some courts, including this Court, have held that such an exception applies where the seller allegedly has conspired with the direct purchaser to "set the price paid by the plaintiff." OP8008. In *Arizona v. Shamrock Foods Co.*, for example, the Court held that although *Illinois Brick* barred a consumer claim that milk wholesalers fixed the *wholesale* price of milk, "[b]ecause this theory of necessity implies a

---

[2] The Supreme Court has recognized only two exceptions: the "cost-plus contract" and the "ownership or control" exceptions. OP8006. Contrary to the assertion of Plaintiffs and their amici (Pet. 8; Amicus Curiae Brief of Interested Retailers and the American Antitrust Institute in Support of Appellants' Petition for Rehearing En Banc ("Amici Br.") at 5), the Court has made clear that additional exceptions—including ones that would apply across markets and industries—are not authorized. *Illinois Brick*, 431 U.S. at 743-44; *Utilicorp*, 497 U.S. at 217.

pass-on of damages to the retail level," it did not bar the consumers' amended claim that wholesalers and retailers agreed to fix the *retail* price of milk. 729 F.2d 1208, 1211 (9th Cir. 1984).

As the Panel and the district court observed, this form of the co-conspirator exception "is not really an exception at all…. If the direct purchaser conspires to fix the price paid by the plaintiffs, then the plaintiffs pay the fixed price directly and are not indirect purchasers (i.e., there is no pass-on theory involved)." OP8008-8009. The Panel correctly concluded that Plaintiffs' claim does not qualify for this "exception" because they "do not allege here that the banks agreed to fix the level of the 'mark up' in the foreign ATM fees [that Plaintiffs pay] or even whether such fees would be charged at all." OP8013.[3]

The Supreme Court has consistently refused to permit exceptions to the *Illinois Brick* rule that would require courts to adjudicate pass-on allegations like

---

[3] Plaintiffs and their amici incorrectly assert that the Panel's decision is the "first instance in which any court" has applied the "co-conspirator exception" in this way. Pet. 6; Amici Br. 19. The Panel correctly explains in detail that this Court's decision in *Kendall*, as well as *Dickson v. Microsoft Corp.*, 309 F.3d 193, 200 (4th Cir. 2002), are in full accord with its decision. OP8009-8011. And Plaintiffs and amici simply ignore other similar decisions. *E.g.*, *Paycom Billing Servs., Inc. v. MasterCard Int'l, Inc.* 467 F.3d 283, 291-92 (2d Cir. 2006) (*Illinois Brick* barred claim that banks and credit card networks conspired to set fees passed on to merchants); *Stanislaus Food Products Co. v. USS-POSCO Indus.*, No. CV F 09-0560, 2010 WL 3521979, at *8 (E.D. Cal. Sept. 3, 2010) (*Illinois Brick* barred claim that "defendants conspired to fix the price of the raw materials for tin cans, not the [tin cans] plaintiff purchases").

Plaintiffs'.  *Illinois Brick*, 431 U.S. at 743-46; *Utilicorp*, 497 U.S. at 216-18.  In

*Utilicorp*, for example, the Court observed that to determine whether a fixed price

was passed through as part of a separate price, the plaintiffs would have to prove

that the defendants would not be able to set the separate price at exactly the same

level in the absence of the price-fixing agreement.  497 U.S. at 209-10.  Thus, in

this case, Plaintiffs would have to prove that banks would not be able to charge

exactly the same level of foreign ATM fees if interchange fees were reduced.  *See*

ER17 (if interchange were eliminated, banks might "continue to set foreign ATM

fees at $2.00").  Because adjudicating this issue would mire the courts in "[t]he

intricacies of tracing the effect of an overcharge on the [direct] purchaser's prices,

costs, sales, and profits," *Illinois Brick*, 431 U.S. at 744—"the very complexity that

*Hanover Shoe* and *Illinois Brick* sought to avoid"—the Supreme Court held that

*Illinois Brick* bars any pass-on claim like Plaintiffs'.  *Utilicorp*, 497 U.S. at 210.

Plaintiffs contend the Panel's decision conflicts with Third and Seventh

Circuit decisions from a decade ago.  Pet. 1-2.  Although the Panel observes those

circuits' decisions may suggest a more expansive "co-conspirator exception" than

this Court has recognized (OP8017 & n.7), there is no conflict.  First, as the Panel

correctly observes, the Third Circuit cases "actually exemplif[y] the exception

allowed when an upstream violator controls or owns the direct purchaser."

OP8017 n.7; *accord Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 968

n.22 (3rd Cir. 1983). In both *Sugar* and *Linerboard*, the defendants allegedly fixed prices and charged them to their own subsidiaries.[4] For the reasons explained above, the ownership or control exception does not apply to Plaintiffs' claim.

Second, the Seventh Circuit's decision in *Paper Systems, Inc. v. Nippon Paper Industries Co.*, 281 F.3d 629, 631-32 (7th Cir. 2000), did not apply the co-conspirator exception, but rather held that *Illinois Brick* does not create an exception to the rule of joint and several liability. That court's dictum suggesting that "the first purchasers from outside the conspiracy" may sue does not purport to hold that standing exists where, as here, the unusual nature of the alleged conspiracy would require the court to engage in pass-on analysis. *Id.* The Seventh Circuit had no occasion to address that issue. Indeed, the *Nippon Paper* conspiracy appears to have been similar to the one alleged in *Shamrock Foods*, where the

---

[4] *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 306-07 (N.D. Cal. 2010), which relied on *Sugar* and *Linerboard* in concluding that *Illinois Brick* did not preclude class certification, likewise involves allegations that the allegedly fixed prices were paid to corporate affiliates. OP8017 n.7. Indeed, contrary to their contentions in this Court (Amici Br. at 2-3, 11-14), retailer amici recently told the district court in *In re TFT-LCD* that the Panel's decision "not only reaffirmed [this Court's] *Royal Printing* exception, but did so in a way that is consistent with this Court's previous decisions applying the *Royal Printing* exception…." Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment for Lack of Standing Under *Illinois Brick* and *ATM Fee* at 2, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 3:07-md 01827-SI (N.D. Cal. Aug. 20, 2012), ECF No. 6503.

conspiring manufacturers and distributors both sold directly to customers.  *See Paper Sys., Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 603 (E.D. Wis. 2000).

Plaintiffs and their amici further err in suggesting that the Panel's decision not to extend the "co-conspirator exception" to Plaintiffs' claim creates "a gaping loophole for price-fixing conspirators."  Pet. 3; Amici Br. 19.  They assert that the decision permits manufacturers to "conspire with a middleman to fix the price of a component part of something the middleman sells" and that "there will be no one with any incentive to enforce the antitrust law" in such cases.  Amici Br. 19.  But that is not the kind of conspiracy Plaintiffs alleged here, where Defendants and thousands of other banks paid tens of millions of dollars in allegedly "fixed" interchange fees each year to *non-conspiring* ATM owners.  ER8-9; SER279-83; *see also* II.C, *infra*.  Moreover, if an allegation that a manufacturer and a middleman "fixed" the manufacturer's price to the middleman were alone sufficient to confer standing on consumers, as Plaintiffs contend, the *Illinois Brick* rule could be easily evaded:  any arms-length middleman buyer could be characterized as a "conspirator" with respect to the price it agreed to pay the manufacturer seller.  *Dickson*, 309 F.3d at 215.

In addition, Plaintiffs and amici do not explain why the direct victims of a price-fixing conspiracy would elect to join it when, as here, there would be no assurance they could pass on the increased prices they pay.  Nor do they explain

why non-conspiring middlemen—who would also pay higher prices to the conspirators—would lack incentive to sue.  Here, the district court concluded that there were thousands of Star members who paid more in interchange than they received, and thus would have an incentive to sue if the interchange fees were artificially inflated.  OP8002 n.2.

In short, no court has extended the co-conspirator exception to cover claims like Plaintiffs'.  And the Panel correctly declined Plaintiffs' invitation to do so here.  The Supreme Court has never recognized the exception Plaintiffs seek, and indeed has repeatedly admonished that it would be an "unwarranted and counterproductive exercise to litigate a series of exceptions" to the *Illinois Brick* rule.  *Utilicorp*, 497 U.S. at 217; *accord Delaware Valley*, 523 F.3d at 1121, 1124.

## C.    Plaintiffs' Unusual and Counterintuitive Claim Presents An Unsuitable Vehicle For En Banc Review

The uncommon nature of Plaintiffs' claim makes this a particularly unsuitable context in which to address the scope of the exceptions to *Illinois Brick*. The conspiracies alleged in the Third and Seventh Circuit cases upon which plaintiffs rely differed substantially from that alleged here.  The plaintiffs in those cases claimed that the defendants *charged* the fixed price to corporate affiliates or fellow conspirators, who then passed it along to plaintiffs.  Thus, only the conspirators benefited from the allegedly higher prices.  Here, in contrast, Plaintiffs' claim is that the defendants *paid* the "fixed" price to non-affiliated ATM

16

owners. Under Plaintiffs' theory, *non-conspirators benefited from the allegedly higher prices. See* Pet. 3-5.

Because bank Defendants paid interchange fees to non-conspiring ATM owners, a court adjudicating Plaintiffs' claim would need to undertake a factual analysis to determine how much, if any, of those payments Defendants actually recovered from Plaintiffs through the alleged pass-on. Indeed, Plaintiffs acknowledged the need for such an inquiry when they submitted the declaration of an economist purporting to analyze how much Defendants would benefit if interchange fees were higher, given consumer price sensitivities, the interplay between foreign ATM fees and other fees, and other factors. ER991-97.

That is precisely the analysis *Illinois Brick* instructs courts not to undertake because "the process of classifying various market situations according to the amount of pass-on likely to be involved and its susceptibility of proof in a judicial forum would entail the very problems that the … rule was meant to avoid." *Illinois Brick*, 431 U.S. at 743-45. *Accord Shamrock Foods Co.*, 729 F.2d at 1211 (*Illinois Brick* bars a claim that "of necessity implies a pass-on of damages"); *Delaware Valley*, 523 F.3d at 1121(same); *Kendall*, 518 F.3d at 1049 (same). The Panel's decision represents nothing more than application of that well-settled law to the unusual facts of this case.

## CONCLUSION

Plaintiffs' Petition for Rehearing En Banc should be denied.

Dated:  August 31, 2012                Respectfully submitted,

                                       MORRISON & FOERSTER LLP

                                       By:  /s/ Robert S. Stern
                                              Robert S. Stern
                                              W. Stephen Smith
                                              Deanne E. Maynard

                                           Attorneys for Defendant-Appellee
                                           JPMORGAN CHASE BANK, N.A.,
                                           Successor-in-Interest to BANK ONE,
                                           N.A.

                                       *Counsel for Additional Defendants-Appellees:*

                                              Sonya D. Winner
                                              Anita F. Stork
                                              Covington & Burling LLP
                                              One Front Street, 35th Floor
                                              San Francisco, CA 94111
                                              Telephone:  (415) 591-6000
                                              Facsimile:  (415) 591-6091

                                           Attorneys for Defendants-Appellees
                                           BANK OF AMERICA
                                           CORPORATION and BANK OF
                                           AMERICA, N.A.

18

Stephen V. Bomse
Orrick, Herrington & Sutcliffe, LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:  (415) 773-5700

Attorneys for Defendant-Appellee
SUNTRUST BANKS, INC.


David F. Graham
Eric H. Grush
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

Attorneys for Defendants-Appellees
CITIBANK, N.A., and
CITIBANK (WEST), FSB

Jack R. Nelson
Reed Smith LLP
Two Embarcadero Center, Suite 2000
San Francisco, California  94111
Telephone:  (415) 543-8700
Facsimile:  (415) 391-8269

Attorneys for Defendant-Appellee
WACHOVIA CORPORATION

Daniel M. Wall
Joshua N. Holian
Latham & Watkins
505 Montgomery Street, Suite 1900
San Francisco, CA  94111
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095

Donald I. Baker
Baker & Miller
2401 Pennsylvania Avenue, N.W.
Suite 300
Washington, D.C.  20037
Telephone:  (202) 663-7820
Facsimile:  (202) 663-7849

Attorneys for Defendants-Appellees
WELLS FARGO BANK, N.A. and
SERVUS FINANCIAL CORP.

Peter E. Moll
Brian D. Wallach
Cadwalader, Wickersham & Taft LLP
700 Sixth Street, N.W.
Washington, D.C.  20001
Telephone:  (202) 862-2332
Facsimile:  (202) 862-2400

Attorneys for Defendants-Appellees
CONCORD EFS, INC. and
FIRST DATA CORP.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Ninth Circuit Rule 40-1, the foregoing Appellees'

Response to Petition for Rehearing En Banc is proportionately spaced, has a

typeface of 14 points, and contains 4,199 words.

Dated:  August 31, 2012                MORRISON & FOERSTER LLP

                                       By:  /s/ Robert S. Stern
                                              Robert S. Stern

                                       Attorneys for Defendant-Appellee
                                       JPMORGAN CHASE BANK, N.A.,
                                       Successor-in-Interest to BANK ONE,
                                       N.A.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing APPELLEES' RESPONSE TO PETITION FOR REHEARING EN BANC with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have dispatched, via U.S. Mail, the foregoing document to the following non-CM/ECF participants:

Daniel B. Allanoff
MEREDITH COHEN GREENFOGEL & SKIRNICK PC
1521 Locust St.
Philadelphia, PA 19102

Parker C. Folse III
SUSMAN GODFREY, L.L.P.
1201 Third Avenue
Seattle, WA 98101

Dated:  August 31, 2012                    MORRISON & FOERSTER LLP

By:  /s/ Robert S. Stern
        Robert S. Stern

Attorneys for Defendant-Appellee
JPMORGAN CHASE BANK, N.A.,
Successor-in-Interest to BANK ONE,
N.A.